In re BEAR PARK, INC., Debtor.

CLEVENGER BRANCH MEMBERSHIP CORP., et al., Plaintiff,

v.

BEAR PARK, INC., Defendant.

Bankruptcy No. 86–02424–S–2–11.
Adv. No. 87–0459–S–2–11.

United States Bankruptcy Court,
W.D. Missouri, S.D.

Feb. 9, 1988.

Gail Fredrick, Springfield, Mo., for plaintiff.

Harold F. Glass, Springfield, Mo., for defendant.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Defendant filed a Chapter 11 Reorganization in mid 1986. Defendant obtained confirmation of its reorganization plan on July 7, 1987, with the effective date of the plan being June 1, 1987. The business of defendant is a park for mobile homes or recreational vehicles and although "time share" of some lots is involved, the majority of the developed lots are owned by individuals who have purchased the entire interest in said lot. Many of these parties make a substantial and continuous—spring through fall—use of the facilities. The defendant itself maintains common areas such as the lodge, rest stations, recreational facilities and provides certain utilities and trash pickup to the individual lots. The confirmed plan received acceptances from over 50% of the number and 66⅔% of the dollars from each voting class of creditors, including the lot owners. The confirmed plan contained the provision that defendant could promulgate and implement new restrictive covenants, new dues assessment and other rules and regulations. Defendant rejected all executory contracts not specifically accepted.

Historically, defendant had charged each lot owner the sum of $390.00 per year as dues or minimum fee for all electrical service, water, sewage, and usage of the common areas. The annual charge was assessed January 1st of each year and was due January 31st of each year. In September of 1987, defendant filed the Sixth Amended Covenants and Restrictions. This document purported to raise the dues for calendar year 1987 from $390.00 per year to $870.00 per year and to make said increase retroactive for the entire year. The increased dues were due and payable by September 30, 1987, and certain rather Draconian (if enforceable) sanctions were promulgated for failure to pay same. Four individuals owning two lots and Clevenger Branch Membership Corporation filed this Complaint against defendant seeking injunctive relief, reinstatement of a lease between defendant and Clevenger Branch

Membership Corporation originally executed in 1974 with The Three Bears, Inc. Said latter entity was a predecessor in interest of Bear Park, Inc., the defendant. Clevenger Branch Membership Corporation was and is a Missouri Corporation that has had the function of homeowners (or in this case a lotowners) association. By the terms of the original lease, defendant leased all the facilities of the premises to the association for $8.00 per month for lots with electricity, water and sewer service and $6.00 per month for lots with only electrical and water service. The dates and evolutionary processes which the lease had undergone to reach the $390.00 per year figure were not disclosed but it seemed clear that the plaintiffs found no fault therein, complaining only of the new and substantial increases sought to be established by the newly filed covenants and restrictions.

This Court had and has considerable reservations about the jurisdiction of this Court to resolve this matter. However, since the plaintiffs have so vigorously asserted jurisdiction and the defendant has voluntarily come into Court and at least tacitly consented to the jurisdiction of the Court, presenting evidence and seeking not only denial of the relief requested by plaintiffs but seeking its own relief from this Court by way of counterclaim against plaintiffs, the Court has heard the evidence and will attempt some solution of the problems presented. *Matter of Ellis,* 674 F.2d 1238 (9th Cir.1982).

Before moving on to specifics, there are three general points that the Court believes must be made and must be understood by the parties. First, if no common ground can be reached by the parties, the end result will be that Great Southern Savings will foreclose its underlying mortgage and every one involved in this venture will lose whatever their investment is or has been to date. Second, throughout all of the proceedings, the Court believes that all of the parties are possessed of good intentions and an honest desire to make the project work. Like so many resort or vacation projects, the individuals have been painted canvasses of unrealistic costs and unfullfill-able dreams. The plaintiffs are understandably concerned, having lived under a cloud of uncertainty and ambiguity for the past two years. In such an atmosphere, trust comes hard and must be earned by demonstrated fair dealing not threats and acts of fait accompli. Third, that $390.00 per year is not a realistic annual charge for electrical service, water service, sewer service and maintenance of the recreational facilities located at the park. It is based on the tripod of these three factors that the Court's decision will rest.

The Court will not detail each item of expense as set out in the format of Bear Park's Exhibit 2 or attempt to explain the rationale of the dollar figure it determines appropriate for the last half of 1987 and for the year of 1988. Instead the Court will simply make use of all the evidence adduced and announce the final results of the Court's deliberations. For the period of June through December of 1987 the Court determines that an additional assessment of $410.00 per lot, over and above the initial assessment of $390.00 established in January of 1987 is proper and appropriate. The Court determines that an assessment of $800.00 for the year 1988 is proper and appropriate. Defendant has asked for an additional assessment of $51.17 per lot for reconnection charges demanded by White River Electric. Of the $15,350.00 required, $13,800.00 represents security deposits. Nowhere in any of defendant's proposals is there any basis for a return of said security deposits to the lot owners. Since some 89.9% of the requested assessment is ultimately returnable, there must be some mechanism for the return thereof to the lot owners before the Court will entertain or endorse such a charge, and same is denied.

The Court ORDERS that all sums collected through such dues or assessments from the lot owners shall be segregated into one bank account and that no charges other than those outlined and delineated in Bear Park's Exhibit 2 shall be paid from that segregated fund. Under the designation "Payroll" not more than $115,000.00 per year shall be paid from said account.

532

No sums attributable to the cost of sale of new lots or memberships shall be paid from said fund. Defendant shall be enjoined from assessing or collecting or attempting to collect from the present lot owners any sums in excess of those outlined herein without further Order of this Court. As to all lot owners who have not paid the allowed 1987 and 1988 charges within sixty (60) days of this Order, defendant may undertake such state court proceedings as are consistent with any and all rights it has under its Articles of Incorporation, appropriate Restrictions and Covenants or the state statutes. The Court will not order reinstatement of the lease since it was properly rejected as an executory contract in the bankruptcy proceedings. Before assessment of 1989 dues or assessments, defendant shall make available to a properly designated attorney or accountant appointed by the Clevenger Branch Membership Corporation its books and records detailing all costs and expenses involved in the operation of the facilities and utilities. Defendant failed to produce credible evidence to sustain the allegations of its counterclaim. The counterclaim is, therefore, ruled against defendant.